## STUCKEY v. NORWOOD.

### Opinion delivered January 24, 1916.

ATTORNEY'S FEES—CONTRACT BETWEEN ATTORNEYS—QUANTUM MERUIT.— Two firms of attorneys were employed to prosecute an action against a railroad company for damages for personal injuries. A member of one of the firms, without authority from or consultation with his associates, undertook to procure the assistance of a third firm to aid in the trial. In an action to determine what portion of the fees collected should be paid to each firm, *held*, that the finding of the chancellor that the third and last named firm of attorneys had no contract for a specific portion of the fee, but that they had been employed in the case and were entitled to recover on a *quantum meruit*, and allowing them a fee of $1,500, would not be disturbed on appeal.

Appeal from Pulaski Chancery Court; *Jno. E. Martineau*, Chancellor; affirmed.

*Campbell & Suits*, for appellants.

1. Stuckey & Stuckey were equally interested with Norwood & Grant as to the fee under the original "Grant contract" providing for one-third of the recovery. If this is true that ends the controversy. 33 Ark. 548; 7 *Id.* 321. What one partner says is binding upon the other if within the scope of the partnership. A contract

is construed most strongly against the party who wrote it. 84 Ark. 434; 90 *Id.* 88; 97 *Id.* 522. The presumption is that Stuckey and Norwood & Grant were equally interested in the fee. 12 Fed. Cas. 1027; 75 Mo. 89; 135 N. W. 27. The object and purpose of the parties and their conduct should be considered. 46 Ark. 127, 131; 105 Ark. 42.

2. It was mainly through Stuckey that Norwood & Grant were in the case. Under the merger of the Grant and Pace contract, and the novated and substituted oral contract, Stuckey & Stuckey are entitled to one-third of the whole fee, or one-half of the amount held by Pace as trustee. 7 Ark. 321; 33 Ark. 548; 6 Rul. Case Law, § 299; 67 Am. Dec. 328; 139 Am. St. 19; 56 *Id.* 656; 24 Am. Dec. 770; 92 Ark. 254.

3. The rule of *quantum meruit* does not apply. 26 Am. St. 605; 3 Ark. 324; 7 *Id.* 321; 78 *Id.* 87.

*Mehaffy, Reid & Mehaffy,* for appellee.

The original contract was made with Grant and Pace. Stuckey was never employed by McMichael, nor by any one authorized to contract for him. No novation nor merger of the Grant and Pace contract was ever made, whereby Stuckey was to be taken into the case, or paid a fee. No new contract was made, nor merger of the original contract. The evidence is conclusive. Stuckey merely assisted Grant as a local attorney. Pace was to have one-third of 50 per cent of the recovery and Norwood & Grant two-thirds of same. Stuckey did little in the case and was merely an assistant to the attorneys who had a contract with McMichael, and the chancellor properly applied the *quantum meruit* rule. All the authorities cited by appellant are inapplicable and his argument fails. Where there is no contract, then a reasonable compensation is all that can be allowed Stuckey. 123 Fed. 48; 70 S. W. 502; 54 *Id.* 87. $1,000 at most should be fixed as Stuckey's fee.

SMITH, J. The parties to this litigation, and the principal witnesses in the case, are lawyers of eminence and, through their joint efforts, secured a judgment in

the case of *McMichael* v. *St. Louis, Iron Mountain &
Southern Ry. Co.* for $35,000. Upon appeal to this court
this judgment was reduced to $25,000, and affirmed for
that amount. 115 Ark. 101.

After the judgment had been collected a controversy
arose between two of the law firms engaged in the case
over their respective shares of the fee which they had
charged their client. The evidence in the case is volum-
inous, and is somewhat conflicting and acrimonious, and
we will not undertake to set out even a summary of the
evidence of the various witnesses, but will only state our
conclusion in regard to it.

McMichael sustained a very serious injury, and for
some time his recovery was regarded as very doubtful,
and he was brought to Little Rock for an operation and
for treatment. His brother-in-law employed the firm of
Norwood & Grant to represent McMichael and to sue for
his damages. This contract was later reduced to writing,
and by its terms it was provided that the attorneys should
receive as their compensation one-third of any sum re-
covered from the railroad company. Before any suit
was brought Judge M. M. Stuckey, of the firm of Stuckey
& Stuckey, of Newport, had been consulted by members
of McMichael's family, but had not been employed. In
this manner he learned that some lawyer, whose name
was at the time unknown to him, had consulted McMichael
and had been employed in the case. Judge Stuckey called
Mr. Grant, of the firm of Norwood & Grant, over the tele-
phone, and advised him of that fact, whereupon Grant
immediately prepared a complaint and sent it to the cir-
cuit clerk at Newport with directions that it be filed and
process issued on it at once. This was done, and after
the institution of that suit Grant stated to Judge Stuckey
that he would want him to assist in the trial of the case.
Only the names of Norwood & Grant were signed to this
complaint. After filing this complaint Grant discovered
that a trial of the case could not be had at the ensuing
term of the circuit court and advised the attorney for the
railroad company to make no preparations for trial at

that term. Whereupon a new suit was brought in the Independence circuit court, and the original suit was dismissed. The names only of Norwood & Grant were signed to this second complaint, as attorneys for the plaintiff.

In the meantime Norwood & Grant discovered that the other attorney concerned in the case was Mr. Frank Pace, of Little Rock, and these gentlemen took up with each other the adjustment of their respective contractual rights, as attorneys for McMichael. Pace had a contract which provided for a contingent fee of 50 per cent., but his contract was made subsequent to the one held by Norwood & Grant, but Pace knew nothing of the other contract at the time his own was made. The parties and attorneys met at Newport, while the case was pending in that county, to settle the conflicting claims of the attorneys. Grant had said to S. M. Stuckey, of the firm of Stuckey & Stuckey, that he would meet Pace for this purpose, and Stuckey told him that whatever he did would be satisfactory to him. Grant and Pace conferred with McMichael, and it was agreed that both firms should remain in the case, McMichael stating that he didn't care how many attorneys were in the case, provided they took, as the whole fee, only one-half interest in the judgment to be recovered. Pace agreed to remain in the case under his original contract, and to pay Norwood & Grant the amount called for by their contract, which was to remain in full force and effect, and to accept as his part the balance remaining after paying Norwood & Grant. After this conference Grant called at the office of Stuckey & Stuckey to advise them of his agreement with Pace, but when he reached the door of that office he was told by S. M. Stuckey that Judge Stuckey, who was the senior member of that firm, was not in, whereupon, without going into the office, Grant stated, "It is all agreed upon satisfactorily. We work upon the contract that McMichael had with Mr. Pace and third it." It is clear that the Stuckeys understood this statement to mean that a contract had been made whereby the total fee was one-half

of the amount recovered and that this sum should be divided equally among the three law firms concerned in the case, and that they continued in the case with this understanding. It is equally clear, however, that the other attorneys in the case, with the possible exception of Mr. Grant, did not so understand the agreement. Pace testified that he discussed and agreed with Grant on the per cent. of the fee which he should have for his own services, but that he did not know Judge Stuckey was in the case until he was so advised by Grant on the train going to Newport, and that the extent of the understanding was that he should be paid one-third of the fee and that Norwood & Grant should receive the per cent called for by their contract. Norwood testified that until after the trip of Grant and Pace to Newport he had never heard Stuckey's name mentioned in connection with the case, and when advised that Grant had employed him he demanded and received an explanation of that connection, and in response to Norwood's question about what the fee would be Grant said: "He will take anything we want to give him."

A Mr. Richardson was also retained in the case, and he testified that Grant told him Judge Stuckey had been employed in the case as local attorney when the case was pending at Newport, and that he had followed up the case in this employment. Richardson was himself employed as local attorney and was paid a fee of $500.

There were two written contracts for the employment and payment of attorneys, and the firm of Stuckey & Stuckey was not mentioned in either of them. Nor does Stuckey claim to have been employed by McMichael. His employment came through Grant. It was shown that Grant had removed from Newport to Little Rock, and that while at Newport Grant and Stuckey had been associated in a good many cases together, in all of which the fee had been divided equally, and Stuckey expected this to be done, in McMichael's case, both because of his previous dealing with Grant and because of the statement made by Grant to Judge Stuckey's brother. But it was

not shown that Norwood knew anything of this custom; indeed, as has been said, he knew nothing of the employment until six months after the contract with McMichael had been made.

The evidence is practically undisputed that Stuckey's rights depend upon his contract with Grant, who was Norwood's partner, and, as such, had the right to make contracts relating to the business of the co-partnership. The court below recognized this fact and stated to Grant the importance of his testimony and thereafter asked the questions to which the following answers were given.

"Q. Did you ever say anything to him (Judge Stuckey) after the conversation in which he notified you that some other party had a contract with McMichael, that you wanted him to act with you in the case, or did you just proceed without anything being said about it?

A. Well, we proceeded along, and, in his office, I told him we wanted him to do some assistance in the case.

Q. Did he know the terms of your agreement with McMichael?

A. Yes, sir; I think he did. I think McMichael told him and his wife told him. That's my recollection about it. And I guess I told him.

Q. When you informed him you wanted him to assist you in the trial of the case, did you say anything to him about the terms on which you wanted him to assist you?

A. No, sir.

Q. Now, Mr. Grant, you know what you meant by that statement. (At Stuckey's office door). Now, I want to know. Did you mean to convey the idea to Mr. Stuckey's partner that you three were to divide the fee equally or did you mean to indicate to him, as your sentence would imply, that you had made an agreement by which Mr. Pace was to have one-third of the fee obtained?

A. Judge, I made that statement. Now, what I had in my mind, I don't know.

Q. Did you intend at that time to make a contract with him by which he was to receive one-third of it? Was that your idea?

A.   I didn't intend to make any contract at all with him.

Q.   That's what I mean.   You didn't intend at that time to make any contract, did you?

A.   I wasn't making any contract.   I just made that statement to him there at the door.   Now, he could consider it whatever way it might be considered.

Q.   I wanted to get your intention.

A.   Yes, sir; I expected Judge Stuckey to be in the case and I expected him to render services in the case and expected him to be paid for his services.

Q.   Was it your intention, without reference to what Judge Stuckey or his partner might have thought about your remark—did you intend at that time to make an agreement with him by which he was to have as much as you and Mr. Norwood?

A.   I didn't intend to make any future agreement with him.

Q.   Did you intend to make any kind of an agreement by that remark?

A.   I intended him to understand he was in the case.

Q.   You had already told him he was in the case?

A.   Yes, sir.

Q.   But you hadn't fixed the terms?

A.   No, sir.

Q.   At that time, did you intend, by that remark, to make a contract with him by which he was to receive as much as you and Mr. Norwood?

A.   I expected him, from that statement, to be reasonably compensated."

In response to other questions the witness stated that it was his intention for them to fight along and when they got through with the case divide the money, but he stated that there was no agreement for any specific amount in case of a recovery.

It is perfectly manifest from an examination of Grant's evidence that he  is in entire sympathy with Stuckey.   Indeed, he very candidly avowed this friendship, and it may be assumed that he stated his agreement with Stuckey as favorably as the truth would permit.

The record shows that Pace and Norwood led in the trial of the case and briefed it both in the Supreme Court on its original submission, and upon the petition for a rehearing, and while the proof shows that Judge Stuckey was a lawyer of experience and learning, and could, no doubt, have tried the case as successfully and skillfully as the attorneys who did try it, the fact remains that it was tried by Norwood and Pace and that the service rendered by Judge Stuckey was similar to the service rendered by Mr. Richardson, that is, as local attorney assisting and advising in the case.

Pace was paid his part of the fee without question, and the evidence in regard to the discussion which took place between Norwood and Stuckey concerning Stuckey's compensation after the judgment had been collected, makes it evident that, even at that time, both Norwood and Pace regarded Judge Stuckey as only local counsel in the case.

The court found from this evidence that Stuckey & Stuckey had no contract for a specific portion of the fee, but that they had been employed in the case and were entitled to recover *quantum meruit,* and allowed a fee of $1,500. We can not say that this finding is clearly against the preponderance of the evidence.

The decree of the court below is, therefore affirmed.